IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


PATRICK L. STIEFEL,

        Plaintiff,

vs.                                                                          2:14-cv-00899-JCH-LF

SOCIAL SECURITY ADMINISTRATION,
CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Patrick L. Stiefel's Motion to Reverse or Remand Administrative Agency Decision (Doc. 25), which was fully briefed June 16, 2015. Pursuant to 28 U.S.C. § 636, this matter has been referred to me for a recommended disposition. Doc. 34. Having carefully reviewed the parties' submissions and the administrative record, I recommend that the Court grant Mr. Stiefel's Motion to Remand.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1)

the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Stiefel was born in 1969, completed high school, and served in the Army Infantry from 1988 to 1991. AR 46–47, 167.[3] He was incarcerated from November 1991 to July 1995. AR 193. After his release, Mr. Stiefel attended college for one year, and worked as a fast food worker and a painter. AR 46, 62, 189.

Mr. Stiefel applied for disability insurance benefits and social security income on May 21, 2010, alleging disability since March 21, 2005, due to chronic pain in his left arm ("shattered elbow w/ 3 metal plates and 19 screws"), and left ankle ("metal plate in ankle and 9 screws"). AR 167–74, 188. His claims were denied initially and upon reconsideration. AR 76–79, 83–86. He requested a hearing before an administrative law judge ("ALJ"), and ALJ Ben Willner held a hearing on July 5, 2012. AR 39–72.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 15-1 through 15-6 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

The ALJ issued his unfavorable decision on March 15, 2013. AR 23–34. At step one, the ALJ found that Mr. Stiefel had not engaged in substantial, gainful activity since April 27, 2010. AR 28. Because Mr. Stiefel had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id*. At step two, the ALJ found that Mr. Stiefel suffered from the following severe impairments: "left elbow fracture; left ankle fracture; status post stab wounds to the lower left extremity; and substance abuse." *Id*. At step three, the ALJ found that none of Mr. Stiefel's impairments, alone or in combination, met or medically equaled a Listing. *Id*. Because none of the impairments met a Listing, the ALJ assessed Mr. Stiefel's RFC. AR 30–33. The ALJ found that:

> [D]ue to a combination of impairments and associated pain, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit for at least six hours in an eight-hour workday (with normal breaks). The claimant could frequently use his dominant left hand to handle and grasp objects. In addition, the claimant is limited to simple tasks and would be able to concentrate for up to two hours at a time.

AR 30.

At step four, the ALJ relied on the vocational expert's hearing testimony to conclude that Mr. Stiefel was able to perform his past relevant work as a fast food worker and as a painter, both as "generally and actually performed." AR 33. Because the ALJ found that Mr. Stiefel could perform his past relevant work, he did not proceed to step five. The ALJ found that Mr. Stiefel was not disabled as defined by the Social Security Act, and he denied Mr. Stiefel's claims. AR 23, 34.

On June 26, 2014, the Appeals Council denied Mr. Stiefel's request for review. AR 5–9. The Commissioner approved Mr. Stiefel's request for additional time to file his appeal to this

Court.  AR 1–2.  Thus, Mr. Stiefel's appeal to this Court, filed on October 6, 2014, was timely.  Doc. 2.

## IV. Mr. Stiefel's Claims

Mr. Stiefel raises four arguments on appeal:  1) the ALJ failed to perform the required function-by-function comparison of his RFC to the requirements of his past relevant work; 2) the ALJ relied on vocational expert testimony that conflicts with the *Dictionary of Occupational Titles* ("DOT") and *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") without obtaining a reasonable explanation for the conflict; 3) the ALJ erred in relying on vocational expert testimony without first presenting all of the limitations adopted in the RFC to the vocational expert; and 4) the Commissioner cannot salvage the step-four errors with post hoc rationalizations or application of "The Grids." Because the Court remands on the basis of the first two arguments, the Court will not address arguments three and four.[4]

## V. The ALJ's Findings that Mr. Stiefel Can Perform his Past Relevant Work as a Painter and a Fast Food Worker are not Supported by Substantial Evidence.

Mr. Stiefel contends that the ALJ erred in determining that he could return to his past relevant work as a painter and fast food worker for two reasons.  First, the heavy exertion requirement of painting conflicted with the ALJ's RFC determination that Mr. Stiefel was capable of performing only light work.  *See* Doc. 25-1 at 16–17.  Second, the ALJ's RFC

---

[4] The Court does not address arguments three or four, as these claims of error "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  With respect to argument three, the Court notes that the ALJ gave the vocational expert incomplete hypotheticals during his questioning of the vocational expert about whether plaintiff could return to his past relevant work.  AR 68–70.  Mr. Stiefel's RFC limits him to simple tasks, and to only being able to concentrate for up to two hours at a time.  AR 30.  The ALJ did not make any findings about these limitations in his step four analysis, and he failed to ask the vocational expert about these limitations in the hypotheticals.  While the Commissioner argues that this is essentially harmless error, the Court notes its concern about the ALJ's failure to analyze these limitations both at the hearing and in his decision.

determination that Mr. Stiefel could use his dominant hand to handle and grasp objects only frequently conflicted with the requirement that a fast food worker must be able to handle constantly.  *See id.* at 17–19.

In her response, the Commissioner does not address Mr. Stiefel's argument that the ALJ erroneously found that he could return to his work as a painter, suggesting that she concedes that he is correct.  *See* Doc. 28 at 3–6.  With respect to a fast food worker's handling capabilities, the Commissioner argues that any conflict between the vocational expert's testimony and the SCO was not "apparent" at the administrative hearing; there was no evidence that the vocational expert relied on the SCO, and no legal requirement that a vocational expert's testimony must conform to the SCO; and if a conflict exists, it was not material because the ALJ only limited Mr. Stiefel to frequent grasping with his dominant left hand, and put no limitation on grasping with his non-dominant right hand.  *See id.* at 4–6.  The Commissioner's arguments are without merit.  The ALJ's findings that Mr. Stiefel can perform his past relevant work as a painter and fast food worker are not supported by substantial evidence.

> The three phases of the step four analysis are as follows:
>
> Step four of the sequential analysis . . . is comprised of three phases.  In the **first phase**, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the **second phase**, he must determine the physical and mental demands of the claimant's past relevant work. . . .  In the **final phase**, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . .  **At each of these phases, the ALJ must make specific findings.**

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (emphases added; internal citations omitted).  At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's prior jobs or occupations.  *See Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993).  To make the necessary

findings, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Winfrey*, 92 F.3d at 1024.

A vocational expert's role at step four is more limited than it is at step five. *Id.* at 1025. While an ALJ may ask a vocational expert about the demands of claimant's past relevant work, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* The phase-two findings must be sufficient for a phase-three finding and for meaningful judicial review. *Id.* ("Requiring the ALJ to make specific findings on the record at each phase of the step-four analysis provides for meaningful judicial review. When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the vocational expert's head, [courts] are left with nothing to review.").

Here, the ALJ failed to make sufficiently specific findings in the second and third phases of step four. The first phase—the ALJ's evaluation of Mr. Stiefel's physical and mental residual functional capacity—was as follows:

> [D]ue to a combination of impairments and associated pain, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit for at least six hours in an eight-hour workday (with normal breaks). The claimant could frequently use his dominant left hand to handle and grasp objects. In addition, the claimant is limited to simple tasks and would be able to concentrate for up to two hours at a time.

AR 30.

The second and third phases of the ALJ's step four analysis were as follows:

> The claimant is capable of performing past relevant work as a fast food worker and as a painter. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

7

>The vocational expert classified the claimant's past relevant work as:
>
>- a fast food worker, DOT #311.472-010, light, unskilled (SVP 2) work; and as;
>- a painter (construction industry), DOT #869.664-014, heavy, semi-skilled (SVP 4) work.
>
>Given my assessment of the claimant's residual functional capacity, I find that the claimant is able to perform his past relevant work as generally and actually performed. This conclusion is well supported by vocational expert testimony, which is consistent with the Dictionary of Occupational Titles.

AR 33. In making this determination, the ALJ relied entirely on the vocational expert's characterization of Mr. Stiefel's past relevant work as described in the DOT and the SCO. *See id.* The ALJ's findings were not sufficient to explain how Mr. Stiefel could perform his past relevant work despite the limitations found by the ALJ in phase one.

### A. Mr. Stiefel's Past Relevant Work as a Painter

Mr. Stiefel argues that the ALJ erred at step four in finding that he could perform his past relevant work as a painter because his RFC limited him to less than light work, and a painter is classified in the DOT as heavy work. Doc. 25-1 at 16–17. Mr. Stiefel's RFC limited him to less than a full range of light work.[5] AR 33. The ALJ found that Mr. Stiefel's past work as a painter was "heavy." AR 30, 33. The vocational expert testified that a person limited to light work could not do Mr. Stiefel's past relevant work as a painter. AR 68–69. The ALJ made no function-by-function findings to support his determination that Mr. Stiefel could work as a painter, *see* AR 33, and no evidence in the record supports this conclusion. The ALJ's finding that Mr. Stiefel could perform his past relevant work as a painter is not supported by substantial evidence.

---

[5] The DOT defines light work as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or negligible amount of force constantly . . . to move objects." Appendix C, U.S. Dept. of Labor, Dictionary of Occupational Titles, 4th ed. Rev. 1991, available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM.

### B. Mr. Stiefel's Past Relevant Work as a Fast Food Worker

Mr. Stiefel argues that the ALJ erred in finding that he could return to his past relevant work as a fast food worker because his RFC limited him to "frequent" grasping with his left, dominant hand, while the SCO states that a fast food worker must "constantly" handle and grasp. Doc. 25-1 at 17–19.  Mr. Stiefel further argues that, because the ALJ failed to obtain a reasonable explanation for the conflict between the vocational expert testimony and the SCO, the ALJ's step four determination is not supported by substantial evidence.  *Id.* at 20.  I agree.

As part of a step four analysis, an ALJ may consult a vocational expert or other resources, such as the DOT "and its companion volumes and supplements." 20 C.F.R. § 416.960(b)(2).  If there is a conflict between vocational expert testimony and the DOT, however, the ALJ has a duty to obtain a reasonable explanation for the inconsistency before relying on the vocational expert's testimony.  *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999*).* "Questioning a vocational expert about the source of his [or her] opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty." *Id.* (clarifying that this duty applies at steps three, four, and five of the sequential evaluation process) (internal citation omitted).  If the ALJ fails to resolve a conflict between vocational expert testimony and the DOT, the vocational expert's testimony cannot constitute substantial evidence to support a determination of non-disability.  *Id.*

The Social Security Administration issued SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) after *Haddock* was decided.  Ruling 00-4p clarified that the ALJ has an affirmative duty to resolve conflicts between vocational expert testimony and the DOT as well as its companion publication, the SCO:

> [B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:  Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and

9

> information in the *Dictionary of Occupational Titles* (DOT), **including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO),** published by the Department of Labor, and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (emphasis added).

At the administrative hearing, the vocational expert testified about Mr. Stiefel's ability to do his past relevant work as a fast food worker. AR 67–69. The vocational expert stated that her testimony would be consistent with the DOT and SCO. AR 66–67. The ALJ asked the vocational expert whether a worker limited to "light exertional level," who was left-hand dominant, and who could only "**frequently** use the left hand and arm to handle and grasp items," would be able to perform the fast food worker job.[6] AR 69 (emphasis added). The vocational expert answered, "Let me check that, Your Honor. Right here. According to the DOT, Your Honor, yes. **They have it under frequent and not constant**." AR 69 (emphasis added).

In his step four analysis, the ALJ relied entirely on this vocational expert testimony—which the vocational expert claimed was consistent with both the DOT and the SCO—to find

---

[6] The DOT describes the work of a fast food worker as follows:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.
> *GOE: 09.04.01 STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU: 86*

DOT 311.472-010 (available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM).

that Mr. Stiefel could perform his past relevant work and therefore was not disabled.  *See* AR 33.  The vocational expert's testimony, however, conflicts with the DOT's companion volume, the SCO.  The DOT lists exertional job requirements.  Non-exertional job requirements (such as those for reaching, handling, and grasping) are found in the SCO.  *See* SSR 85-15, 1985 WL 56857 (1985).[7]  According to the SCO, the job of fast food worker requires constant handling, not merely frequent handling as the vocational expert testified.[8]

The Commissioner argues that there was no evidence that the vocational expert relied on the SCO, and no legal requirement that the vocational expert's testimony "conform" to the SCO.  Doc. 28 at 5.  The vocational expert, however, swore that her testimony would be consistent with both the DOT and SCO.  AR 66–67.  Additionally, the fact that handling requirements are not addressed in the DOT, but only in the SCO, supports Mr. Stiefel's argument that the vocational expert's testimony must have been based on a misreading of the SCO, not the DOT.  *See* Doc. 25-1 at 20–22.

The vocational expert's testimony that a fast food worker only requires frequent rather than constant handling creates a clear conflict.  Under both *Haddock* and SSR 00-4p, the ALJ had a duty to obtain a reasonable explanation for the inconsistency before relying on the vocational expert's testimony as substantial evidence.  Because the ALJ did not resolve this conflict, his step four findings are not supported by substantial evidence.  The Court therefore should remand the case for proper step four analysis.

---

[7] The SCO, available at http://www.nosscr.org/sco/sco.pdf, defines how often a non-exertional activity is required for a particular job:  ranging from Not Present (N), to Occasionally (O), to Frequently (F), to Constantly (C).  SCO, Identification Key, ID-2.

[8] The ALJ found that Mr. Stiefel's past job was defined by DOT code 311.472-010.  AR 33.  The DOT lists a "Guide for Occupational Exploration" (GOE) number (used for reference to the SCO) of 09.04.01 for this occupation.  *See* DOT 311.472.010.  The SCO for GOE 09.04.01 states that a fast food worker must be able to handle on a constant basis, not a frequent basis as the vocational expert testified.  SCO at 365; *see also* SCO, Identification Key, ID-1.

The Commissioner's argument that the ALJ did not have a duty to resolve the conflict because Mr. Stiefel's attorney failed to make it "apparent" at the hearing is without merit. Under *Haddock*, "an ALJ has a duty to fully develop the record even when the claimant is represented by an attorney. . . . Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty." 196 F.3d at 1091 (internal citations omitted). For this Court to hold that the ALJ was free to rely on un-contradicted but patently inaccurate vocational expert testimony would permit the ALJ to avoid the duty imposed on him by both *Haddock* and SSR 00-4p. Social security proceedings are non-adversarial, and most claimants, as well as many of their attorneys, are unfamiliar with social security law. *See Haddock*, 196 F.3d at 1090. Thus, it is the ALJ's duty—as the participant most familiar with social security law—to elicit any inconsistencies between a vocational expert's testimony and the DOT or SCO and obtain an explanation for them. *See id.* at 1090–91.

Here, the vocational expert made a mistake, and her testimony was erroneous. The ALJ relied on that erroneous testimony to find that Mr. Stiefel was capable of performing his past relevant work as a fast food worker. AR 33. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). Because the ALJ based his finding on erroneous—and therefore unreliable—vocational expert testimony, the finding is not supported by substantial evidence.

The Commissioner's final argument is that there was no material conflict for the ALJ to resolve because the SCO does not address the extent to which an individual must be able to constantly handle with **both** hands. Doc. 28 at 6. The ALJ, however, did not make any explicit

findings that Mr. Stiefel could do his past relevant work while having only "frequent" use of his dominant hand as required in the third phase of his step four analysis. Moreover, the vocational expert testified that if Mr. Stiefel were limited to only occasional handling and grasping with his dominant hand, he would not be able to perform past relevant work that required frequent handling. AR 69. This testimony suggests that if the vocational expert had read the SCO correctly and determined that a fast food worker required constant handling, she would have opined that an RFC that limited Mr. Stiefel to only frequent handling would make him incapable of performing work that required constant handling.

Furthermore, the Tenth Circuit addressed limitations on the use of a dominant hand in *Carson v. Barnhart*, 140 F. App'x 29 (10th Cir. 2005). There, a vocational expert testified that the plaintiff, who was limited by his RFC to only occasional reaching with his right, dominant hand, could perform jobs that the SCO defined as requiring frequent reaching. *Id.* at 36–37. The court held that the ALJ erred in relying on the vocational expert's testimony without first resolving the conflict with the SCO. *Id.* In this case, Mr. Stiefel also has an RFC that limits only his dominant hand. As in *Carson*, the ALJ must resolve the conflict between the vocational expert's testimony and the SCO before relying on vocational expert testimony as substantial evidence.

## VI. Conclusion

For the forgoing reasons, I recommend that the Court grant plaintiff's Motion to Remand (Doc. 25) to allow the ALJ to revisit step four. The ALJ must address the apparent conflict between Mr. Stiefel's inability to perform heavy work and the ALJ's finding that Mr. Stiefel is capable of performing his past relevant work as a painter, which the ALJ characterized as heavy work. The ALJ also must address the apparent conflict between Mr. Stiefel's ability to handle

with his dominant, left hand only frequently, and the SCO's determination that a fast food worker must be capable of handling constantly.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge